Good morning. We're going to go on the record and we'll dispense with the calling of the calendar and I'll ask the clerk to call the first name, the first case. Case number 22-1368 from Southern Iowa. Case number 22-1576 from Southern Iowa. United States v. Jeffrey Kock. Ms. Quick Good morning. May it please the court. Mr. Kock was convicted after a jury trial of several charges related to tax law violations. While I'm happy and prepared to address any questions on any of the issues raised in the brief, today I plan to focus on the FREDA challenge, Mr. Kock's guideline challenge, and the government's cross appeal asserting that the district court erred in refusing to impose the cost of prosecution. Turning first to the FREDA challenge, Mr. Kock's waiver of a Sixth Amendment right to counsel was not knowing, voluntary, and intelligent. As a preliminary matter, the standard of review for this argument is de novo. The government does not strongly assert that plain error review applies to this claim and no court has so held. But under either standard, under either standard, Mr. Kock's waiver was not valid. The parties agree that when determining whether a FREDA colloquy was sufficient, it's not about looking and seeing if certain questions were asked and checking those questions off, and if they were, then it's a valid waiver. It's personal to each circumstance and each defendant. Our position is that if something comes up during this colloquy, the defendant makes a statement that is a fundamental misunderstanding of a Sixth Amendment right to counsel, or something simply incorrect, then the trial court conducting that colloquy has the burden or the duty to inquire and to clarify into any misstatement or incorrect belief. The failure to do so results in an invalid waiver. And that's exactly what happened here. Mr. Kock, during that initial FREDA waiver, and then even in a later hearing, indicated an incorrect belief on the ethical obligation of defense attorneys and appeared to believe that any defense attorney who was appointed to him would be in cahoots with the prosecutor, with the court, and didn't understand the duties and obligations that defense attorneys have towards their clients. Does it make any difference that he went through three colloquies with, I think, I'm not positive, at least two judges, maybe three different judges, all of whom, I think, found his waiver to be knowing, intelligent, and voluntary? I don't believe so, Your Honor. And because Mr. Kock was advised over and over again, this is a bad idea. You will do better having appointed counsel. But if it was never clarified to him throughout these three colloquies, or these three different interactions, what that attorney's obligations were and their duties to him were, he couldn't intelligently and voluntarily and knowingly waive it if he clearly didn't understand what he was waiving. So even though it was discussed multiple times, because that was not clarified and explained to him, he didn't know what he was giving up. Counsel, at one point, it seemed to me that one of the three judges did begin to address this idea of what it means to be a member of the bar and a lawyer representing you. And I thought that Mr. Kock said something like, well, even so, I don't want one. Some phrase like that. Does that sound familiar in the record to you? Yes, Your Honor. And what do we do with that? It almost was like, well, he had a number of concerns about going with counsel, and this was one of them, as you raised. But does it matter that he was like, well, I've got other reasons that I don't want one as well? No, Your Honor. And I would note that specific colloquy that the court is referencing, that judge in that instance did do a little bit more than the first judge, where the first judge said, fair enough, and then didn't elaborate or explain anything further. But still, the later discussion where the, I believe that started because Mr. Cook stated, well, Mr. Call, the prosecutor, you're a member of the bar, and all attorneys are members of the bar. Still, in that interaction, the court didn't state, they have ethical obligations to you. There are special protections in this circumstance between a defense attorney and a defendant. Didn't explain things like attorney-client privilege, conflicts, just the ethical obligations in general. There was a discussion, but it was too vague. It was simply, yes, attorneys are all part of the bar, but it doesn't mean they're on the same team. They still have a duty to represent you zealously. And when someone like Mr. Cook, who's already expressed and relied upon this document, saying, I think that at the end of the day, they have to default to their duty to the court and their duty to the prosecutor over me, that saying they have a duty to represent you zealously is insufficient. What was said necessarily incorrect? And the reason why I state that is, for example, a lot of times defendants want a particular case cited. And the case has been overruled, right? And so the attorney's not going to cite an overruled case to the court, or they want a particular defense brought, but there's no evidence supporting it. And so in the end, the counsel can't make completely frivolous arguments or violate his duty to the court. So it's sort of a touchy question, but I guess I'm pointing to where in the transcript did it cross the line in terms of him having a completely incorrect understanding and the district court not correcting it? So the point across the line would be when he was referencing this document that was an indicator giving to people who are saying, you shouldn't trust your attorney. And at the point he's relying on this document where it states, and it seems that it's kind of cherry picked one section, saying the duty of your attorney is first to the courts and to the prosecution, then to you. At the point where Mr. Cook is citing this and saying this, that's when the alarm bells kind of go off. And there was a duty on the trial court to say, well, it's not that simple. And it's something that lawyers might understand, but quite often our clients just don't. And it's something that needs to be explained to them. And simply stating fair enough and then entering this as an exhibit was not enough to ensure that Mr. Cook really understood what he was waiving and what he was giving up in his right to counsel. And I would agree that the other circumstances of these different colloquies in and of themselves wouldn't be sufficient to establish an invalid waiver, but it kind of bolsters this initial claim that it was not a valid waiver. Mr. Cook did not recall what happened in his case just a few years ago, quite simple case when he represented himself and he did not appear to care or understand what would happen to him with regards to sentencing. So for all of those reasons, we assert that his federal waiver was invalid and reversal is required. Turning next to his sentencing challenge. Before you turn there, I just want to ask you, I know you didn't get a chance, but what did he exactly mean, if you can tell, when he said that there was no longer any controversy after he registered a bond condition to answer any judgment? That was the other ground for you. Do you have any idea what that means? I have no idea what that means. And I think our position is that that alone wouldn't be enough to establish an invalid waiver, but it shows that it wasn't valid and how potentially if Mr. Cook, and maybe Mr. Cook, even if it was explained to him the duties and ethical obligations of a defense attorney, would still have waived. But we don't know that because he wasn't provided those warnings and wasn't able to give a valid waiver. Turning next to the guidelines challenge. The district court committed procedural error in calculating Mr. Cook's guideline range. The consummate of the asset count, count 13, should not have been grouped with the remaining 12 counts. Because of this improper grouping, that two-level obstruction enhancement was applied. Now, the PSR and the prosecutor asserted that grouping was appropriate under 3D1.2C. Under there it states, the guidelines say if this separate count, if the obstructive conduct that forms the basis for this separate count was for the purpose of obstructing the investigation into the remaining counts, then the count should be grouped. But here, this concealment, this refusal to turn the car into the remaining counts, it was not for the purpose of obstructing the remaining counts. And the fact that this might have been fruits of some of the other charges is insufficient to show that this concealment was for the purpose of obstructing the investigation into the other counts. And I would note, the obstruction of justice enhancement in general, under the commentary notes, notes that the obstruction enhancement is potentially not applicable in circumstances like when a defendant is arrested and as they're being arrested they're trying to flush drugs down the toilet or something like that. And this is akin to that. Here's a circumstance where the agents are coming in, they're serving seizure warrants, and is simply refusing to turn over the car. So for those reasons, we assert it was procedural error to group and then therefore apply this two-level enhancement. And this error was not harmless, and the government can't meet its burden to prove it was harmless. This court has stated that alternative sentences can establish harmless error, but how those generally occur is when a district court is at the conclusion of the sentencing, imposing a sentence, stating the reasons for the sentence under 3553A, makes a statement, you know, even if I'm wrong on this enhancement, I would still give the defendant the same sentence for X, Y, and Z reasons. But that's not what the district court did here. The district court didn't make that statement when imposing the sentence and discussing the 3553A factors. The district court made this kind of alternative sentence statement when ruling on the guidelines challenge and didn't even explicitly state, as does occur when imposing an alternative sentence or giving an alternative basis, simply said, you know, I would vary upward. Didn't state my sentence would be the exact same, just indicated that maybe there would be grounds to go upward even if this two-level enhancement didn't apply. On the money laundering count, I wonder, you know, you make a good argument about this isn't traditional obstruction, but the fact of the matter is, is the money laundering, and it's not really traditional money laundering either. Going out and buying a $200,000 Mercedes is not exactly hiding your assets. But nevertheless, I just wonder whether hiding the car, whether is an obstruction because, you know, in a murder case you want to have the body. In a money laundering case you want to have whatever item the person bought or whatever. And so here they didn't have that. So perhaps it would have been more difficult to prove the money laundering count as to that particular car. And doesn't that constitute obstruction? So I would disagree. And I think at least for purposes of this enhancement, looking at when grouping is applicable when you have an obstruction separate count, what's critical is the language that says, for the purpose of. For the purpose of obstructing the investigation into the remaining counts. Here, Mr. Cook, and while we might disagree on this belief was reasonable or valid, he believes the seizure warrant was invalid because the date was wrong. And his belief as he stated during trial was, I just want to ensure my due process rights were upheld. And while it did eventually go to a hearing and Judge Jarvie ordered that the car be overturned or be turned over to law enforcement, and he immediately did so. Immediately gave them keys and let them know where the car was. So I think the key here when thinking about grouping is that for the purpose of language. If there are no other questions on the sentencing challenge, I turn next to the government's cost appeal. The district court was correct to deny the prosecution's request for Mr. Cook to pay the cost of prosecution for two reasons. First, the government failed to file an affidavit of costs, which is a statutory requirement. And second, the district court was correct that this court's precedent requires that district courts consider the defendant's ability to pay before imposing cost of prosecution. Now, turning first to the failure to file an affidavit, this is mandatory. It's something that must be filed when requesting the cost of prosecution because it's necessary for the district court to determine if these are reasonable costs. Even if it's a situation where the cost of prosecution should be imposed, there still needs to be the analysis of whether this number is right and whether this number is appropriate to order. And the failure to file that affidavit prevented the district court from making that analysis. This court has reversed for the failure to file an affidavit of costs and also has refused to allow it to be cured on remand, finding that it would be unreasonable to allow the court to do so. And I think it's another kind of relevant school of thought to this of why this court shouldn't allow remand to file an affidavit of costs. Similar to the idea of you don't get a second bite at the apple. If there's a claim that a party is making and that party had the opportunity to put forward whatever evidence, or in this case the affidavit, and then come up on appeal, if there's no good reason why that wasn't done in the first instance, this court shouldn't give the party an opportunity to fix it on remand. So if the government had stood up and said, hey, we can't put in our affidavit of costs of prosecution at this point because we have an expert that we intend to call at the sentencing hearing, and that's going to be an additional cost, so we would ask leave to file our affidavit following the hearing, that would be okay? I would think so. Okay. So the problem here is that the issue was never really preserved. Correct. And I looked and I couldn't find any indication that this cost of prosecution would be something like restitution, where it's like, you can order it, but we're going to set another hearing to figure it out at a later date. I didn't find anything that equating the two, that this is something that could be delayed for a later hearing. Well, I may have a broader view of what the inherent powers of district judges are, but I do think that the judge could have done that, right? Even if the judge could have, it just wasn't addressed. It wasn't brought up. But it's also not, and I'm getting to the next point a little bit, but it's also not a fine. We said it was a fine. I think we were wrong. I think it's just plain wrong to call it a fine because it lists fines and then it lists costs separately. So just by sort of the way you read statutes, it can't be a fine. And so it's somewhere in that nebulous area between maybe restitution and fines. So does that change the analysis at all? As far as the second part of whether the district court should have considered the ability to pay? Well, no, no. Just generally in terms of when you file it. Because we get motions for costs many, many months after, for taxation of costs on an appellate level. And so I just wonder whether it's as fatal as you think it is. If it's sort of a form of restitution, even though it may not be bound by the same rules of restitution. I would say it's fatal because it wasn't, maybe repeating what I said, it just wasn't addressed at all. If this is something that there was no indication, like, well, there might be costs because of what's going to happen in that sentencing. Or we haven't received information from this witness or this expert. That might be a different circumstance. We're also dealing with kind of the unique circumstance of a criminal defendant. I think this comes up more often when you're dealing with civil cases. And generally, the defendant's case is complete at the time of sentencing, at least with the trial court. And the only circumstance I could think of was restitution. But even in restitution where it's something that's going to happen after that sentencing hearing, that's something that should be at least discussed at the sentencing hearing. And as far as just quickly to address just the merits of the argument, Wyman is not controlling, and May is binding on this court. Wyman didn't explicitly address the ability to pay. That argument wasn't raised by the defendant in that case. There, the defendant stated, well, I had a court appointed an attorney, so you can't order me to pay the cost of prosecution. And the court rejected that argument, stating that indigent defendants are not necessarily judgment-proof, indicating that there might be circumstances where it's appropriate not to impose the cost of prosecution. May did explicitly address this issue and stated that the court must consider the ability to pay. And later panels have followed May as requiring courts to consider ability to pay. Although that's based on, I think it's kind of a throwaway line at the end, and it's based on the, I think, clear misbelief that it's a fine, not a form of cost of restitution. I think, I mean, even if the court disagrees with May, it's binding on this court. But I do think May was right to say it's akin to a fine. It's similar to a fine. It might not be exactly like a fine, but it's kind of within the same vein of a fine. Is there a way to and May together, you know, reconcile them? I do believe so. And I believe the way to read them is that Wyman didn't explicitly address what May did. And is that, is it ever not appropriate to consider, or is it ever, is the district court always barred from considering the ability to pay? Let me give you another interpretation, which is it has to be above zero, which is what Wyman says. It needs to be at least positive. But how much it is depends upon the ability to pay. So whether it's $1 or $1,600 depends on the ability to pay. That would be a great way to reconcile both cases pretty cleanly, I think. Potentially, and considering what the costs actually are. But I would, in this circumstance, I don't think there was any challenge that Mr. Cook didn't have the ability to pay. And he already had a $400,000 restitution obligation. There are no immediate questions. I'll reserve the remainder of my time for rebuttal. Thank you. Mr. Call. May it please the court, Andrew Call for the United States. I tried this case in the court below. Like Ms. Quick, I will address the FREDA issue, the sentencing issue, and the cost of prosecution issue, of course, being available to answer any other questions the court may have about the other issues. There were four, if not five, FREDA proceedings in the district court. If you will, I will assume for the sake of argument that Judge Adams at the initial FREDA hearing might have explored this issue of the duties of counsel a little bit more in depth, although I think, frankly, her colloquy and findings are well supported by the record and adequate. But assuming the other to be the case, there were additional proceedings. Mr. Cook failed to appear for a pretrial conference and was arrested as a result of a bench warrant and had an appearance in front of another magistrate judge, Judge Locher. Judge Locher again discussed the FREDA waiver with him and asked Mr. Cook, frankly, to consider accepting the appointment of counsel. Mr. Cook wavered a little bit but said for the time being he wanted to continue to represent himself. Then after he was released and the status conference finally occurred on August 27th, that was the date where the district judge in great detail talked about this notion of lawyers being on the same team and what the duties of loyalty were. Judge Ebbinger explained, quote, these are standards that govern everyone who practices law and they, under those standards, are required to zealously represent the clients they work with. So I think with that statement alone adequately explained to Mr. Cook to the extent he needed that kind of explanation that a lawyer who represented him would have a duty of loyalty to him. What if he still didn't understand that? What if he made, I don't know if he did, I forget the ordering of what happened, but what if he comes back and says, but your honor, the counsel's not representing me as this sheet says. The counsel owes a duty to the court. And is the duty discharged by the judge or the judge can just move on from there and ignore that statement? Well, I think the judge can make a finding based on the totality of the record, whether the defendant is engaged in some sort of gamesmanship or whether there really is a failure to communicate. Here, Mr. Cook's response was, I still don't think it's in my best interest to take representation. That's his personal choice under FRERTA that has to be honored. Judge Ebinger, again, at the final pretrial conference, which would have been, I believe, the Friday before trial, again went through a FRERTA inquiry. You've declined the assistance of counsel. Yes. You're doing that knowingly and voluntarily because you want to be the on the morning of trial in a more summary fashion, although there was an extended discussion about this bond issue and the judge explaining to Mr. Cook that this was not some sort of Title 15 or commercial dispute or some other issue, but it was a criminal case. And so that was explained to him. So I think based on the record, Mr. Cook's concerns were adequately addressed by the district court. There was no FRERTA error, and that argument ought to be rejected by this court. As to the sentencing issue, the probation office did explicitly tie the enhancement to the money laundering counts and specifically the count 10, which related to the sedan that Mr. Cook said that he hid. As a side issue, Mr. Cook has a theory that he didn't believe the warrant was valid and he had questions about it. Well, those are really more jury arguments than anything else. If you look at the seizure warrant, it is true that it has a 30-20 date on it, although right below that the clerk stamp makes clear that it was filed in 2020 and obviously it was served in 2020, not 30-20. And you say it's a jury question because the jury found him guilty on the concealment of an asset count? Yes, as well as the money laundering. These sort of feel like jury arguments. What did Mr. Cook believe? Well, what Mr. Cook believed was up for the jury to decide, and the district court found that the verdict was supported by overwhelming evidence. I also think that... Well, doesn't the obstruction enhancement itself require some state of knowledge, some intent to obstruct? Absolutely, right. And so then isn't the question of what he believed he was doing, isn't it at that point, not a jury? It's a question ultimately for the finder of fact at the time of sentencing, not a jury question. I think that's a fair point, but the district court need not have accepted Mr. Cook's self-serving statement. Here as well, moving to the harmless error argument, I don't think there are any magic words or a particular point in the proceeding where the district court has to say at the time of imposition of sentence, well, going back to my prior comment on variance, I would arrive at the same sentence. I think based on the extensive discussion that Judge Ebinger had regarding this enhancement and her view that it would be inappropriate not to have this additional penalty imposed for purposes of the concealment of the asset, even if Mr. Cook's reading of the guideline was correct, is more than sufficient to meet the harmlessness. Finally, as to the issue of cost of prosecution, I will address both prongs of the argument. As to the merits, Wyman says the trial court has discretion to impose either a fine or imprisonment or both, but the trial court does not have discretion to fail to award costs. I think that takes care of the idea that there's some way to reconcile Wyman with May. Counsel, isn't there something different, though, between going in form of papyrus as in Wyman and then later in May talking about an ability to pay? It seems to me that while those are related, they're not necessarily the same thing, the same analysis. I would say the analysis would be very similar to the analysis for mandatory restitution purposes, for special assessments. Those are mandatory and there's simply no room in the statutes to allow for a district court to engage in these findings. I think the Chavez and the cases from the other circuits we've cited in our brief are also consistent with this idea that the cost of prosecution is really a binary decision. Either the costs have been established or they haven't, but the ability to pay is not a relevant factor that the district court can consider. And I guess my question is much for sort of reconciling the two cases. I understand your position that you think May is just incorrect. At least I think that's what you're saying. But in terms of what we need to follow, I'm just wondering if that distinction is meaningful enough that we could at least start there for distinguishing them to say that Wyman just didn't address what May did. I understand the argument. The government just doesn't think there's any room there for the sort of distinction that your honor is suggesting. Moving on then to the... Let me ask you this. I'm going to follow up. So I'm having difficulty with Wyman and May. I think that they're potentially irreconcilable. But I'm going to ask you... They'd be potentially irreconcilable if there's zero ability to pay and no costs were ordered. At that point, for sure, they would be irreconcilable because you would take away the mandatory duty to order them. But I wonder if there's a middle ground. I just want to get your take on it, which is they have to be positive. You have to order them. But it doesn't say you have to order them at a particular amount. At least May doesn't say that. So I'm wondering if that is a potential middle ground or whether you think that the government's position is, nope, that doesn't work either. I will be honest. I hadn't thought of that permutation before our argument today. I understand the appeal of that approach. As a practical matter, costs tend to be fairly nominal. This is one of these issues that comes up a lot and may seem very small potatoes, but has this ability to repeat itself in case after case, which is one of the reasons we are bringing this question to the court. I do want to address the 1924 issue, which I am, frankly, embarrassed by. The government did not file the affidavit, but we would underline a couple of things. First of all, the failure of the government to file an affidavit was not raised in the district court below. So we're trying to address this for the procedural posture we find ourselves in. The fact that they haven't been taxed means that the affidavit can still be filed in the district court. Highland, which is the first case that Mr. Cook talks a lot about in his brief, did involve a remand for purposes of an affidavit. In the Highland case, the district judge had apparently considered cost of the investigation as something that ought to be imposed. As I read the case, essentially, sua sponte, had imposed cost of prosecution. There was no affidavit, and this court said the matter had to be remanded and an affidavit could be filed during the proceedings on remand. Barcom, the 2022 case we talk about in our brief, indicates again that it is acceptable to file the bill at some later time. In Barcom, the issue was apparently a timing requirement under the rules of civil procedure that would not apply in this case, but the district judge had discretion to allow the party to file an untimely affidavit. Suppose that there had been no appeal filed here where the government could raise this. Several months after the trial is over, sentencing is done. Under your view, could the government go back in and say, hey, district court, we forgot something. We're filing an affidavit of cost. Please give us those costs because we messed up here. I think that would be extreme. I don't think the government would do that. I don't think we could do that. I think once the judgment is entered and the appeal is filed, in this case, the district court lost jurisdiction. I don't think this is the sort of thing that can go on forever, but while the case is still a live case, either in the district court or in this court, we think we have the ability to file that affidavit. It's also important to the government that the court address the Wyman issue, which has seemingly divided this circuit and appears in this case is even more unfair to the defendant. Because in my example, it was a few months later after the case was closed, the time for appeal was done. But here, we're not going to have taxation of cost. I don't know how long this case has been pending when it was filed. I'd have to look at the date of the brief. But we're probably talking about a year and a half, maybe two years by the time the district court, if we were to remand and have the district court do it again. And I'm just wondering whether this is the best vehicle to say, we're going to forgive the failure to file an affidavit below. Well, there's no prejudice here. Mr. Cook is on notice on what witnesses were talking about, what the costs are, what the specifics are. He had an opportunity to make those kinds of objections as well in the district court and chose not to. This isn't the sort of thing where we've concealed what the issue is. I also do want to indicate this idea that there's a $404,000 restitution obligation is a little bit misleading because as indicated in the probation office's summary of the objections to the pre-sentence report, the vehicles were forfeited in a civil case and through the ordinary course of administrative processes, those funds eventually will be used to credit Mr. Cook with restitution. That's not to say he still is not going to have a large restitution obligation, but that larger figure is a little bit misleading. Counsel, can I follow up on your comment about the defendant having adequate notice of the costs? I mean, I understand your point that he saw who was called as a witness, how many witnesses, how long the trial went, but what would give a defendant notice of just sort of a dollar amount? Frankly, I'm not sure that I would be able to estimate that, even if you told me how many witnesses were called, the type of the witness, and how long the trial went. Well, I think the numbers in the bill of costs are surely not unreasonable. I mean, some of the witnesses didn't even bother to ask for witness fees, so they were not included, but the first one is Janice Reckert from OS Restaurant Services, for whom we were seeking $316. Mr. Cook would know what the witness fees were. He would understand that she is somebody who had to travel from Florida to Des Moines in order to testify, and the other figures down the line, I won't go through them in any detail here this morning, but that's certainly an indicator to him, and again, if he or his attorney had a problem with those amounts, there was an opportunity to raise that either informally or formally with the district court of sentencing, and he chose only to make the inability to pay argument. If there are no further questions on this issue or any other, I will yield back the balance of my time and ask that the convictions be affirmed and that the matter be remanded for an imposition of cost of prosecution. Seeing none, thank you, Mr. Call. Ms. Quick. The major concern here, it appears, with the cost of prosecution is reconciling Wyman and May, and I also had not thought about, does this ability to pay go to amount, but I think what's instructive on how do we reconcile the two is this court's admittedly unpublished decision in Tindall. There was a question of the cost of prosecution. The panel, in that opinion, cited both Wyman and but still ultimately determined that May required that the district court consider the defendant's ability to pay before imposing cost of prosecution, and in that case, the government had made the same argument that May is just flatly incorrect, and the panel said, well, we're still bound by May, and so the district court is required to consider cost of prosecution, and in that opinion, the panel even noted May's language about shall and that it is mandatory that it be imposed. Time is up. There are no further questions. We ask this court reverse his conviction and sentence, or in the alternative, affirm the district court's order that the cost of prosecution must consider the ability to pay and therefore are inappropriate in Mr. Cook's case. Thank you, Ms. Quick. The case is submitted. I want to thank you for your briefing and argument here today. It's been helpful. You may call the next